[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
 FACTS
On February 10, 2000, the plaintiffs, Fernando I. Bravo and Pedro C. Bravo, as coadministrators of the estate of Olga Bravo, filed an amended complaint against the defendants, Ford Motor Company (Ford Motor) and Hoffman Ford, Inc. (Hoffman Ford) alleging that Ford Motor placed a Ford Escort equipped with a defective air bag into the stream of commerce. The plaintiffs allege that when Olga Bravo collided into a tree and fence, the air bag deployed causing traumatic injuries to Olga Bravo that resulted in her death. The plaintiffs allege that pursuant to General Statutes § 52-572m et seq., both Ford Motor and Hoffman Ford are legally responsible for the death of Olga Bravo.
Both Hoffman Ford and Ford Motor have filed special defenses CT Page 5439 maintaining that Olga Bravo was at comparative fault for causing the injuries and damages she allegedly sustained. The plaintiffs have now moved to strike those special defenses.
 DISCUSSION
"The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) Danbury v. Dana Investment Corp., 249 Conn. 1, 17, 730 A.2d 1128
(1999). A plaintiff may move to strike a special defense. See Girard v.Weiss, 43 Conn. App. 397, 417, cert. denied, 239 Conn. 946, 686 A.2d 121
(1996); Practice Book § 10-39(a)(5). "In ruling on the . . . motion to strike, the trial court recognize[s] its obligation to take the facts to be those alleged in the special defenses and to construe the defenses in the manner most favorable to sustaining their legal sufficiency."Connecticut National Bank v. Douglas, 221 Conn. 530, 536, 606 A.2d 684
(1992).
The plaintiffs argue that the special defense filed by Hoffman Ford and the first special defense filed by Ford Motor, both alleging comparative fault, fad to state a legally sufficient defense. Specifically, the plaintiffs argue that the decedent's comparative fault in causing the initial collision is an irrelevant consideration.
In opposition, the defendants first argue that General Statutes §52-572o[1] is dispositive of the plaintiffs motion. In addition, they argue that the Superior Court authority cited by the plaintiffs in support of their motion is unpersuasive in reasoning, particularly in light of the fact that the position taken therein is the minority view among the several other jurisdictions considering the issue.
The instant action is a product liability action brought pursuant to General Statutes § 52-572m et seq., specifically, under the theory of enhanced injury. As recognized in the leading case of Larsen v. GeneralMotors Corp., 391 F.2d 495 (8th Cir. 1968), under the enhanced injury doctrine, also known as the "second collision" or "crashworthiness" doctrine, an automobile "manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision." Id., 502. "Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." Id., 503. CT Page 5440
Connecticut law provides that comparative fault principles apply to product liability actions. General Statutes § 52-572o (a) provides that "[i]n any claim under sections . . . 52-572m to 52-572q" the comparative responsibility of the claimant diminishes the award of damages proportionately. (Emphasis added.) On its face, § 52-572o
expressly applies to all product liability actions. No exception is provided for that class of product liability actions, such as the present one, brought under the theory of enhanced injury.
In Connecticut this issue has apparently only been addressed in three Superior Court cases, all cited by the plaintiffs. See Strohecker v.Trailmobile group of Companies Ltd., Superior Court, judicial district of Waterbury, Docket No. 138776 (May 22, 1998, Pellegrino, J.) (22 Conn.L.Rptr. 146); Foster v. American Honda Motor Co., superior Court, judicial district of Waterbury, Docket No. 128535 (July 2, 1996,Vertefeuille, J.) (17 Conn.L.Rptr. 237); Balboni v.American Honda Motor Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 221355 (February 14, 1980,Hendel, J.). The Strohecker and Foster
decisions address the precise issue raised by the plaintiff's motion to strike.
In Foster, the trial court granted the plaintiffs' motion to strike several special defenses alleging the plaintiffs' comparative negligence in causing the initial collision. Judge Vertefeuille, now Justice Vertefeuille, stated that "[t]he cause of the automobile collision is not at issue in a crashworthiness case." Foster v. American Honda Motor Co.,
supra, 17 Conn.L.Rptr. 237. She concluded that "in a crashworthiness case, evidence of the plaintiffs' negligence will be admitted if it relates to the cause of the enhanced injuries, but excluded if it relates to the cause of the collision." Id., 238. Judge Vertefeuille makes no mention of § 52-572o in Foster.
Research from other jurisdictions reveals that the courts are sharply split on the issue of whether a plaintiffs comparative responsibility in causing the initial collision is a proper consideration in an enhanced injury case. The plaintiffs cite Reed v. Chrysler Corp., 494 N.W.2d 224,229-30 (Iowa 1992), in support of their position. In Reed, the plaintiff, a passenger in a vehicle involved in a rollover accident, brought suit against the defendant on a crashworthiness theory. The defendant sought to introduce the driver's and the plaintiffs intoxication as evidence of comparative fault in causing the initial collision. The court held that any negligence of the plaintiff in connection with the initial collision could not be used by the manufacturer in defending against the enhancement claim. Id., 230. Its CT Page 5441 reasoning was that the crashworthiness theory, "which presupposes the occurrence of accidents precipitated for myriad reasons, focuses alone on the enhancement of resulting injuries. The rule does not pretend that the design defect had anything to do with causing the accident. It is enough if the design defect increased the damages. So any participation by the plaintiff in bringing about the accident is quite beside the point." Id.
"The Reed decision represents the clear minority view of this issue."Estate of Hunter v. General Motors Corp., 729 So.2d 1264, 1271 (Miss. 1999); see also Meekins v. Ford Motor Co., 699 A.2d 339, 343
(Del.Super. 1997); Restatement (Third), Torts, Products Liability § 16, Reporters' Note, p. 255 (1998). "[I]mplicit in the [minority position] is the premise that a plaintiffs initial negligence in causing an accident is not a proximate cause of his enhanced injuries." Whitehead v. ToyotaMotor Corp., 897 S.W.2d 684, 694 (Tenn. 1995). In a vigorous dissent inReed, Iowa Supreme Court Justice Carter refuted this premise: "The rules that determine the causal relationship between a claimant's negligent conduct and the injury for which recovery is sought are the same as those that apply in determining the defendant's liability. . . . Conduct that, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred, is a proximate cause of the event." (Citation omitted.) Reed v. Chrysler Corp., supra, 494 N.W.2d 231 (Carter, J., concurring in part and dissenting in part, joined by McGiverin, C.J.,Schultz, J., and Snell, J.). "The situation presented in enhanced injury claims does not differ substantially from other situations in which the defendant's fault is premised on a failure to protect other persons from the consequences of their own negligent acts. Consequently, there is no logical reason to use different rules for fault comparison in enhanced injury claims than would be used in claims involving negligent failure to warn or negligent failure to install safety devices." Id. "Because under settled principles of proximate cause, a claimant's fault that producesan injury-producing occurrence will also be a proximate cause c/theenhanced injuries sustained, the usual rules for fault comparison should apply to the enhanced injury portion of the claim." (Emphasis added.) Id.
The majority view agrees with these principles of proximate cause set out in the Reed dissent and thus holds that a plaintiffs comparative negligence in causing the initial collision is a proper issue in an enhanced injury action. See, e.g., Montag v. Honda Motor Co., Ltd.,75 F.3d 1414, 1419 (10th Cir.), cert. denied, 519 U.S. 814,117 S.Ct. 61,136 L.Ed.2d 24 (1996) (applying Colorado law); Keltner v. Ford MotorCo., 748 F.2d 1265 (8th Cir. 1984) (applying Arkansas law); Hinkamp v.American Motors Corp., 735 F. Sup. 176, 178 (E.D.N.C. 1989), aff'd, 900 F.2d 252 (4th Cir. 1990); Trust Corp. of Montana v. Piper AircraftCorp., 506 F. Sup. 1093 (D.Mont. 1981); Meekins v. Ford Motor Co.,
CT Page 5442 supra, 699 A.2d 346; Estate of Hunter v. General Motors Corp., supra, 729 So.2d 1273; Oltz v. Toyota Motor Sales, U.S.A., Inc., 531 P.2d 1341,1343 (Mont. 1975); Whitehead v. Toyota Motor Corp., supra, 897 S.W.2d 693;Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 428 (Tex. 1984). These cases reject the premise that the first and second collisions are separate events with unrelated causative factors. "While plaintiffs have typically argued that accident-causing factors and injury-causing factors are qualitatively different and must be argued separately, the modern trend rejects this piecemeal approach, focusing the inquiry on the product design as an integrated whole and considering all the factors which contribute to the event which causes the injury." (Internal quotation marks omitted.) Estate of Hunter v. General Motors Corp.,
supra, 1271. "[E]ven if a collision is not caused by a structural defect, a collision may precipitate the malfunction of a defective part and cause injury. In that circumstance the collision, the defect, and the injury are interdependent and should be viewed as a combined event." (Internal quotation marks omitted.) Ford Motor Co. v. Hill, 404 So.2d 1049,1052 (Fla. 1981). "Comparative causation, is especially appropriate in crashworthiness cases where the product defect causes or enhances injuries but does not cause the accident. The conduct which actually causes the accident, on the other hand, would not cause the same degree of harm if there were no product defect. Rather, it is a combination of factors that causes plaintiffs injuries. The jury is asked to apportion responsibility between all whose action or products combined to cause the entirety of the plaintiffs injuries." Duncan v. Cessna Aircraft Co.,
supra, 428. This is also the position adopted by the Restatement (Third), supra, § 16, comment (f).[2]
The cases of Montag v. Honda Motor Co., Ltd., supra, 75 F.3d 1414, andMeekins v. Ford Motor Co., supra, 699 A.2d 339, exemplify the majority view. In Montag, the plaintiffs argued that Colorado's product liability comparative fault statute did not apply to crashworthiness cases and that the decedent's initial negligence in driving her car into the path of an oncoming train was irrelevant to their action seeking damages for enhanced injuries caused by a defectively designed safety restraint system. Montag v. Honda Motor Co., Ltd., supra, 1419. The court rejected this argument, holding that the scope of the comparative fault statute was broad enough to encompass crashworthiness claims. Id. The court stated that, given the broad interpretation of the statute, "no good reason exists not to allow the jury to compare [the decedent's] initial negligence with Honda's fault in designing the seat belt. In every crashworthiness case, the jury will be required to determine how much of a plaintiffs injuries resulted from the initial collision and how much of the injuries were the result of a second collision. . . . Thus, to an extent, the jury is already comparing the plaintiffs and the defendant's behavior in order to determine causation. Requiring the jury to make a CT Page 5443 similar determination for the purpose of damages is certainly reasonable and consistent with Colorado's comparative fault statute." Id.
In Meekins, the plaintiff sued the automobile manufacturer after the vehicle he was driving was involved in a collision at an intersection, claiming enhanced injuries allegedly caused by defective deployment of an air bag. Meekins v. Ford Motor Co., supra, 699 A.2d 339. The plaintiff objected to the manufacturer's defense of the plaintiffs negligence in causing the accident by failing to stop at a stop sign. After undertaking an in depth analysis of the opposing sides of the issue, the court held that evidence of the plaintiffs comparative fault in causing the initial accident was admissible and should be compared to the manufacturer's fault in designing a defective air bag. Id., 344-46. The court first noted that Delaware's comparative injury statute "applies, on its face, to all actions"; id., 344; and then reasoned that the approach argued by the plaintiff ignores a well established rule of proximate cause: "Our tort law has historically recognized the fact that there may be more than one proximate cause of an injury. . . . The existence of other proximate causes of an injury does not relieve a plaintiff driver under Delaware's comparative negligence statute from responsibility for his own conduct which proximately caused him injury." Id., 345. "It is obvious that the negligence of a plaintiff who causes the initial collision is one of the proximate causes of all of the injuries he sustained, whether limited to those the original collision would have produced or including those enhanced by a defective product in the second collision." Id., 346; accord Doupnik v. General Motors Corp., 225 Cal.App.3d 849, 857,275 Cal.Rptr. 715 (1990) (the issue "has to do with the relative contributions of successive wrongs, [the plaintiffs] driving off the road and [the defendant's] defective welds, to the injury he suffered. With respect to products liability the issue is one of comparative fault. . . . With respect to causation the issue is one of concurrent cause" (citation omitted)); see also Harvey v. General Motors Corp., 873 F.2d 1343
(10th Cir. 1989) (driver's negligence imputed to plaintiff passenger in operating vehicle under the influence of alcohol and drugs and at excessive speeds, as well as manufacturer's unreasonably dangerous defective design of "T-Top" roof resulting in plaintiffs ejectment from vehicle, found to be proximate causes of plaintiffs injuries).
It is the opinion of this court that the majority view represents the better reasoned approach. While the court agrees that a plaintiffs negligence in causing the crash is irrelevant to the duty of the manufacturer to design a crashworthy vehicle because the duty arises from the very fact that accidents, regardless of how caused, are foreseeable;Meekins v. Ford Motor Co., supra, 699 A.2d 341 ("cause of the collision therefore has no bearing on the duty of the manufacturer to design a vehicle so as to minimize injuries from collisions which the manufacturer CT Page 5444 knows will in many cases occur" (emphasis added)); the court disagrees, however, with the conclusion drawn in the Reed and Foster cases that it necessarily follows from this principle that a plaintiffs responsibility in causing the initial collision is also irrelevant to causation of the entirety of the plaintiffs injuries, including enhanced injuries. To make such an assumption is to hold as a matter of law that, in every crashworthiness case involving enhanced injuries, the alleged defect is the sole proximate cause of the enhanced injuries. "`Proximate cause is . . . an act or failure to act which is a substantial factor in producing a result.' Sanders v. Officers Club of Connecticut, Inc., 196 Conn. 341,349, 493 A.2d 184 (1985). Whether proximate cause exists in a given case is ordinarily a question of fact." Blancato v. Randino, 30 Conn. App. 810,813, 622 A.2d 1032 (1993); see also Nolan v. Nationwide Mutual Ins. Co.,60 Conn. App. 68, 73, 758 A.2d 432, cert. denied, 255 Conn. 920,763 A.2d 1042 (2000). "Conclusions of proximate cause are to be drawn by the jury and not by the court." (Internal quotation marks omitted.)Trzcinski v. Richey, 190 Conn. 285, 295, 460 A.2d 1269 (1983). Thus, this court holds that the issue of the claimant's comparative responsibility in causing the initial collision is properly raised in a crashworthiness action.
The plaintiffs point to Meekins v. Ford Motor Co., supra, 699 A.2d 345, to argue that, even if comparative fault principles apply generally to crashworthiness claims, the court in that case identified a narrow exception for cases exhibiting "a clear line of demarcation." InMeekins, the court stated: "Under some circumstances there may exist a clear line of demarcation between the injuries sustained as a result of the initial collision and those enhanced injuries arising from a defective product. The case of a driver running into a tree at a slow speed and being ejected from the car as the result of a defective seat belt, for instance, might create a situation where it is clear that no injuries would have occurred without the ejection." Id. Far from advocating the position advanced by the plaintiffs, however the court was cautioning that "[o]ne must be careful to resist the temptation to view this issue in an isolated, over simplified way," as one might be prone to do under the above illustration arguably very similar to the facts alleged in the present case. As the court explained, although such a "clear line of demarcation" demonstrates that the rule barring evidence of the claimant's comparative negligence might be "workable," this is not to say that the rule is "advisable." Id. "[M]ost cases are not so clear cut . . . [and there may be] potentially several acts of negligence, all of which might be proximate causes of the plaintiffs injuries." Id. "Under this factual situation it would be difficult and confusing to instruct a jury that it should not consider the cause of the collision but only the cause of the enhanced injuries." Id. CT Page 5445
The plaintiffs' concerns, however, are not ignored. It may very well be, as the facts allege in this case, that the decedent's negligence as a factor contributing to the injury-producing event was minimal, but such will be reflected in the percentage of fault assigned to each party. Section 52-572o allows the trier of fact to consider both the "nature and quality" of the decedent's conduct in determining the percentage of responsibility. General Statutes § 52-572o (c). "Jurors have had no difficulty in apportioning fault equitably between multiple parties where negligent conduct is the proximate cause of injuries." Meekins v. FordMotor Co., supra, 699 A.2d 345. "In comparing everyone's negligence, the jury may consider many facts bearing on negligence as a proximate cause of the injury. For instance, plaintiffs negligence might have caused the initial collision and thereby constitute one of the proximate causes of the injury but the jury might conclude, after weighing all of the circumstances, that it was less than [the manufacturer's] negligence in designing an air bag which was expected to protect the occupants of cars who would foreseeably be involved in similar types of collisions. The jury has wide latitude in comparing negligence and it does not automatically follow that if a plaintiff is 100% at fault in causing the initial collision, a jury will find that his negligence compared to' a manufacturer's negligence in designing an air bag . . . [diminishes accordingly the plaintiffs] recovery." Id., 346. It is thus unpersuasive for the plaintiffs to allege and argue: that no injuries would have occurred but for the defective deployment of the air bag. Rather than demarcate the chain of events as if each was a separate, unrelated occurrence, this court agrees with the approach of the majority view that all accident-causing factors and injuring-causing factors should be considered as an integrated, combined, whole event. Estate of Hunter v.General Motors Corp., supra, 729 So.2d 1271.
In conclusion, this court notes that "the ultimate objective of comparing negligence in a products liability case is to apportion, on a percentage basis, all causes of the mishap resulting in damages." (Internal quotation marks omitted.) Whitehead v. Toyota Motor Corp.,
supra, 897 S.W.2d 693. "The majority view is based on the belief that the fault of the defendant and of the plaintiff should be compared with each other with respect to all damages and injuries for which the conduct of each party is a cause in fact and a proximate cause." Id., 693-94. "Any claim for "enhanced injuries' is nothing more that a claim for injures that were actually and proximately caused by the defective product. For example, suppose that a plaintiff is driving a car and is involved in a two-car accident, for which plaintiff is entirely at fault; suppose further that plaintiff incurs $100,000 in damages as a result of this accident. Even though plaintiffs fault precludes him from recovering from the other driver, plaintiff brings an action against the manufacturer of the car, alleging that the seat belt system is defective. Plaintiff CT Page 5446 alleges that if the seat belt system had been properly designed and installed, he would have only suffered $50,000 in damages." (Emphasis in original.) Id., 694. "This type of claim is often characterized as one for "enhanced injuries.' The name given to the action has no real significance, however, because it merely represents the portion of thetotal damages for which the manufacturer is potentially liable; it is the "products liability' component of the suit. (The manufacturer could not be liable for the first $50,000 in damages, which would have been incurred even if the seat belt had been properly manufactured and installed). Therefore, it is illogical to hold that comparative fault applies to products liability actions generally, but does not apply to "enhanced injury' claims. The questions are, in reality, the same." (Emphasis in original.) Id., 694-95. An anomalous result would occur, indeed, if a manufacturer whose defect caused the initial collision could assert the plaintiff's comparative negligence to reduce liability while one whose defect merely enhanced the injuries in that same collision could not.
For the foregoing reasons, the plaintiffs' motions to strike the defendants' respective special defenses based on comparative negligence are denied.
Berger, J.