ST. JOHN URBAN DEVELOPMENT CORPORATION *v.*
MABEL CHISHOLM
(AC 29202)

McLachlan, Gruendel and Borden, Js.

Argued October 28—officially released December 16, 2008

*Abram Heisler*, for the appellant (plaintiff).

*Mabel Chisholm*, pro se, the appellee (defendant).

*Opinion*

BORDEN, J. The plaintiff, St. John Urban Development Corporation, appeals from the judgment of the trial court in favor of the defendant, Mabel Chisholm, in this summary process action. The plaintiff claims that the court improperly concluded that the plaintiff could not evict the defendant because it had proven that the defendant had materially breached the lease. We affirm the judgment of the trial court.

The plaintiff pursued this summary process action in two counts: (1) under count one, nonpayment of rent; and (2) under count three,[1] violation of the lease by

---

[1] The plaintiff withdrew count two, namely, that the defendant had failed to keep the rental unit in a clean and sanitary condition.

failing to maintain the service of electricity to the unit, "thereby creating a dangerous and unsafe condition." The defendant denied the allegations of the complaint and asserted that she could not be evicted because she was protected by the provisions of General Statutes § 47a-23c. The court found in favor of the defendant on both counts of the complaint and rendered judgment accordingly.[2] This appeal followed.

Section 47a-23c, in general, protects from eviction certain tenants who are either older than age sixty-two or disabled, except in the circumstances provided in § 47a-23c (b) (1).[3] It is undisputed that the defendant is a tenant afforded protection under the general terms of the statute because the complex in which she resides consists of more than five units and she is *both* older than age sixty-two and physically disabled. See General Statutes § 47a-23c (a) (1). In the third count of the complaint, the plaintiff alleged that the "[d]efendant violated Section 10 of [the] lease by failing to maintain electricity service to the unit thereby creating a dangerous and unsafe condition." Thus, the principal issue at trial under this count was whether the plaintiff could evict the defendant under § 47a-23c (b) (1) (C) because it had proven that she committed a violation of the lease that "materially affects the health and safety of

---

[2] The plaintiff does not challenge the court's finding that it had not proven nonpayment of rent under the first count.

[3] General Statutes § 47a-23c (b) (1) provides in relevant part: "No landlord may bring an action of summary process or other action to dispossess a tenant . . . except for one or more of the following reasons: (A) Nonpayment of rent; (B) refusal to agree to a fair and equitable rent increase . . . (C) material noncompliance [of the tenant's lawful responsibilities], which materially affects the health and safety of the other tenants or which materially affects the physical condition of the premises; (D) voiding of the rental agreement . . . or material noncompliance with the rental agreement; (E) material noncompliance with the rules and regulations of the landlord . . . (F) permanent removal by the landlord of the dwelling unit of such tenant from the housing market; or (G) bona fide intention by the landlord to use such dwelling unit as his principal residence."

the other tenants or . . . the physical condition of the premises . . . ." General Statutes § 47a-23c (b) (1). The plaintiff also contended at trial that the failure of the defendant to pay the electricity bill was itself a material noncompliance with the lease, thereby permitting the eviction of the defendant pursuant to § 47a-23c (b) (1) (D).

The court found, in an oral decision, that the defendant had violated § 10 of the lease by failing to maintain electrical service, that the electrical service had been shut off for one day and that the plaintiff had assumed payment for the service, but that the plaintiff had not proven that there was a dangerous or unsafe condition created. The court also found that failing to pay the electricity bill alone did not constitute a material breach of the lease. The plaintiff did not seek further articulation of the court's decision.

On appeal, the plaintiff's only claim is that the court improperly rendered judgment in favor of the defendant on the ground that the plaintiff had not proven a violation of § 47a-23c (b) (1) (D); see footnote 3; because, the plaintiff asserts, the court had ruled in its favor on the third count.[4] More specifically, the plaintiff's entire legal argument on appeal is that "[t]his was precisely the ruling of the court on [c]ount [t]hree of the complaint," namely, that by failing to pay the electricity bill, the defendant—materially had breached the lease. We disagree.

Although the court initially declared that "the defendant violated § 10 of the lease by failing to maintain

[4] The plaintiff does not challenge the court's finding that it did not prove an actual safety hazard. Thus, to the extent that the plaintiff's claim on appeal can be construed as an attempt to revive its claim at trial under § 47a-23c (b) (1) (C), which addresses a material noncompliance that involves threats to the health and safety of others or the physical condition of the premises, we decline to consider it because the plaintiff has not briefed its claim under that statutory subparagraph.

electrical service . . . and therefore [the court] finds in favor of the [plaintiff] on count three of the complaint," it later clarified its finding, stating that it "only found that the electrical service was shut off and that the [plaintiff] took over the payment of the bill." Additionally, the court noted that the electrical service was terminated for only one day and that no evidence of a safety hazard resulting from the nonpayment and service cutoff was presented by the plaintiff. In the absence of a motion for articulation, we read an ambiguous trial record to support, rather than to undermine, the judgment. *Thompson* v. *Orcutt*, 70 Conn. App. 427, 441, 800 A.2d 530, cert. denied, 261 Conn. 917, 806 A.2d 1058 (2002). Furthermore, the court later specifically stated that in the absence of proof of a safety hazard, it did not regard the failure to pay the electricity bill, resulting in a one day shutoff of service, as a material noncompliance with the lease. Therefore, contrary to the plaintiff's claim, the court did not find that the defendant had committed an act of material noncompliance with the lease.

Finally, whether a tenant's default under a lease constitutes a material breach of the lease is a question of fact, subject to reversal only if it is clearly erroneous. *Miller* v. *Guimaraes*, 78 Conn. App. 760, 767–68, 829 A.2d 422 (2003). The plaintiff has not attempted to persuade us why failure to pay one month's electricity bill, a one day shutoff of service and the landlord's subsequent assumption of payment of the electricity bill must, under these circumstances, constitute as a matter of law a material breach of the lease. As noted previously, the plaintiff's entire legal argument on appeal is the one sentence quoted previously.

The judgment is affirmed.

In this opinion the other judges concurred.