## JENNIFER PICKERING v. ASPEN DENTAL MANAGEMENT, INC.
### (AC 27645)

Harper, Lavine and Pellegrino, Js.

---

Argued February 8—officially released April 24, 2007

*Christopher N. Parlato,* for the appellant (plaintiff).

*William E. Murray,* for the appellee (defendant).

PELLEGRINO, J. This appeal arises from an action brought by the plaintiff, Jennifer Pickering, against the defendant, her former employer, Aspen Dental Management, Inc. The plaintiff appeals from the judgment of the trial court, claiming that the court improperly granted the defendant's motion to strike the first count of her complaint,[1] which alleged that the defendant violated General Statutes § 51-247a[2] when it terminated the plaintiff's employment after having received notice of her intention to appear for jury duty service, and that a violation of § 51-247a is negligence per se. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. In April, 2002, the defendant hired the plaintiff to work full-time as a dental assistant. On March 14, 2003, the plaintiff received a notice that she was scheduled to appear for jury duty service on March 26, 2003. On March 15, 2003, the plaintiff gave the notice to the defendant, and informed it that she intended to comply with the jury summons.

---

[1] Initially, the action was brought in two counts. The plaintiff also alleged that the defendant discriminated against her in violation of General Statutes § 31-290a (a) by discharging her after she had filed a claim for workers' compensation benefits. This second count, however, was later withdrawn on August 19, 2005. The appeal therefore is from a final judgment.

[2] General Statutes § 51-247a provides in relevant part: "(a) An employer shall not deprive an employee of his employment, or threaten or otherwise coerce him with respect thereto, because the employee receives a summons in accordance with the provisions of section 51-232, responds thereto, or serves as a juror. Any employer who violates this section shall be guilty of criminal contempt, and, upon conviction thereof, may be fined not more than five hundred dollars or imprisoned not more than thirty days or both.

"(b) If an employer discharges an employee in violation of this section, the employee, within ninety days of such discharge, may bring a civil action for recovery of wages lost as a result of the violation and for an order requiring reinstatement of the employee. Damages recoverable shall not exceed lost wages for ten weeks. If he prevails, the employee shall be allowed a reasonable attorney's fee fixed by the court."

Upon receipt of the jury duty notice, the defendant issued three written warnings to the plaintiff concerning her job performance and then terminated the plaintiff's employment by issuing her a letter of termination.

The plaintiff served a complaint against the defendant on May 17, 2004. In the first count of her complaint,[3] the plaintiff alleged that the defendant's act of terminating her employment in violation of § 51-247a was negligence per se, and she sought damages for loss of income and emotional suffering. On December 3, 2004, the defendant filed a motion to strike this count of the complaint on the grounds that (1) the plaintiff did not serve her complaint within the ninety day statute of limitations period provided by § 51-247a (b),[4] (2) the plaintiff's negligence claim essentially was a wrongful discharge claim, which required allegations of *intentional* conduct, and therefore could not sound in negligence or the negligent violation of a statute, and (3) the plaintiff did not have a remedy at common law for wrongful discharge because the statutory remedy provided by § 51-247a (a) was the plaintiff's exclusive remedy.

The court concluded that the plaintiff failed to state a claim on which relief could be granted, and it granted the defendant's motion to strike on July 19, 2005. In its memorandum of decision, the court stated: "It is immaterial how this court characterizes count one . . . . To the extent that it is based on a common-law claim sounding in negligence, that count one is stricken on the ground that § 51-247a is the exclusive remedy available for an employee seeking redress after allegedly being terminated from employment for responding to a jury service summons." This appeal followed.

---

[3] See footnote 1.

[4] In her memorandum of law in opposition to the defendant's motion to strike, the plaintiff stated that the "defendant's negligence, as evidenced by the pleadings, occurred on April 23, 2003." She also admitted that she did not bring the underlying action within the time provided by § 51-247a (b).

We begin by setting forth the applicable standard of review. "The standard of review in an appeal from the granting of a motion to strike is well established. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Dlugokecki* v. *Vieira*, 98 Conn. App. 252, 256, 907 A.2d 1269, cert. denied, 280 Conn. 951, 912 A.2d 483 (2006).

I

Although the plaintiff has admitted that a statutory cause of action is barred under § 51-247a (b),[5] she argues that her negligence action is not barred because § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." To that end, the plaintiff argues that a violation of § 51-247a (a) may be used as the basis of a negligence per se claim because, by violating this particular statute, the defendant also violated public policy. We are not persuaded.

A similar issue was before our Supreme Court in *Burnham* v. *Karl & Gelb*, *P.C.*, 252 Conn. 153, 745 A.2d 178 (2000). In the underlying action in that case, the *Burnham* plaintiff initially filed a complaint with the Hartford office of the Occupational Safety and Health Administration (Hartford office), alleging that her employment was terminated by the defendants, her employer, in retaliation for her complaint to the dental association, which concerned the defendants' alleged

---

[5] See footnote 4.

unsanitary and unhealthful business practices. Id., 155. Due to the plaintiff's failure to respond, however, to further correspondence she had received from the Hartford office, her complaint was "administratively closed." Id. The plaintiff then filed a complaint against the defendants, alleging, inter alia, that she was wrongfully discharged in violation of the public policy embodied in General Statutes § 31-51m. *Burnham* v. *Karl & Gelb, P.C.*, supra, 155–57. The defendants' subsequent motion for summary judgment was granted by the trial court. Id., 155. This court later affirmed the judgment of the court on appeal. See *Burnham* v. *Karl & Gelb, P.C.*, 50 Conn. App. 385, 397, 717 A.2d 811 (1998), aff'd, 252 Conn. 153, 745 A.2d 178 (2000).

The plaintiff's petition for certification to appeal was granted by our Supreme Court, which concluded that the plaintiff was precluded from bringing a common-law cause of action for wrongful discharge because one of the statutory provisions at issue, § 31-51m (c),[6] provided a statutory remedy for employer conduct that was prohibited under § 31-51m (b).[7] *Burnham* v. *Karl & Gelb, P.C.*, supra, 252 Conn. 161–62. The *Burnham* court recognized that "[a] *finding that certain conduct contravenes public policy is not enough* by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer." (Emphasis added; internal quotation marks omitted.) Id., 159. The *Burnham* court further noted that "[t]he cases which have established a tort or

---

[6] General Statutes § 31-51m (b) provides in relevant part: "No employer shall discharge, discipline or otherwise penalize any employee because the employee . . . reports . . . a violation or a suspected violation of any state or federal law or regulation . . . to a public body . . . ."

[7] General Statutes § 31-51m (c) provides in relevant part: "Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation . . . ."

contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was *otherwise without remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Emphasis in original; internal quotation marks omitted.) Id., 159–60.

In the present case, the plaintiff seeks to mask her wrongful discharge claim by labeling it a "negligence per se claim." The plaintiff's brief, however, continuously asserts the public policy embodied in § 51-247a and argues that the defendant wilfully violated that policy by terminating the plaintiff's employment. The fact still remains that the plaintiff claims to have been wrongfully discharged because of the defendant's failure to abide by § 51-247a. Because § 51-247a provides a statutory remedy for persons who find themselves in the plaintiff's position, the plaintiff was not "otherwise without remedy," and she is therefore precluded from bringing a common-law cause of action with regard to the defendant's conduct. See *Burnham* v. *Karl & Gelb, P.C.*, supra, 252 Conn. 159–60. Additionally, "when the . . . statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action." (Internal quotation marks omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 710, 802 A.2d 731 (2002). The name the plaintiff chooses to attach to that cause of action is irrelevant, and the fact that the statute of limitations period on her claim has run does not change our analysis.

II

The plaintiff relies on *Gore* v. *People's Savings Bank*, 235 Conn. 360, 665 A.2d 1341 (1995), and *Ward* v. *Greene*, 267 Conn. 539, 839 A.2d 1259 (2004), to support

the proposition that the court did not use the proper analytical framework when assessing her negligence per se claim. The plaintiff argues that she is within the class of persons § 51-247a (a) was designed to protect, and that she suffered the type of injury § 51-247a (a) was intended to prevent. Specifically, she argues that a broad interpretation of the statute, i.e., treating § 51-247a (a) as if it engrafted "a legislative standard onto the general standard of care imposed by tort principles," would extend tort liability to the defendant. We are not persuaded.

Generally, the treatment of a statutory violation as negligence per se has occurred in situations in which the statutes or city ordinances at issue have been enacted for the purpose of ensuring the health and safety of members of the general public.[8] For example, in *Gore*, one of the statutes at issue was General Statutes (Rev. to 1985) § 47a-8. This particular statute incorporated the federal statutory standards for lead based paint. *Gore* v. *People's Savings Bank*, supra, 235 Conn. 364. In that case, the landlord of the plaintiffs' residential dwelling was found to be in violation of this statute, and, as a result, the plaintiffs filed a complaint alleging that their minor son suffered injuries because of his exposure to lead based paint. Id., 363–64. Our Supreme Court recognized that the violation of § 47a-8 constituted negligence per se: "[T]he legislative history

---

[8] See, e.g., *Gore* v. *People's Savings Bank*, supra, 235 Conn. 378 ("[t]he majority of cases concluding that a statutory provision implicates the doctrine of negligence per se have arisen in the context of motor vehicle regulation"); *Commercial Union Ins. Co.* v. *Frank Perrotti & Sons, Inc.*, 20 Conn. App. 253, 260, 566 A.2d 431 (1989) (violation of New Haven ordinance requiring that combustible materials be separated from other waste before being sent to dumping ground and that signs at dumping ground indicate presence of combustible materials could be shown to constitute negligence per se); *Bailey* v. *Bruneau's Truck Service, Inc.*, 149 Conn. 46, 54, 175 A.2d 372 (1961) (truck drivers' violation of safety regulations promulgated by Interstate Commerce Commission constitutes negligence per se).

reflects that a clear purpose of the act was to end the health problems arising specifically from the presence of lead-based paint. . . . Children are those most likely to incur health problems as a result of exposure . . . . Consequently, we believe that the legislature intended to include children such as [the plaintiffs' minor son] within the class of plaintiffs protected by the statute and that it intended to protect such plaintiffs from the hazards of lead poisoning. As a result, we agree with the Appellate Court that a violation of § 47a-8 constitutes negligence per se for the purposes of the plaintiffs' action." (Citations omitted; internal quotation marks omitted.) Id., 381–82.

In *Ward*, the issue was whether General Statutes § 17a-101 imposed a duty of care on child care providers, and ultimately, whether a violation of this statute constituted negligence per se or some other form of negligence. *Ward* v. *Greene*, supra, 267 Conn. 541, 548. Our Supreme Court concluded that the statute was intended to protect identifiable victims, i.e., children for whom reports of abuse and neglect were made or should have been made, and that the plaintiff did not fall into this class of persons. Id., 560. The *Ward* court noted: "The public policy concerns inherent in the present case are of profound importance, namely, the protection of children's health and welfare, which may be affected adversely through injury and neglect. We are mindful, however, that extending liability to a mandated reporter for potential future abuse of children, unknown to the mandated reporter, may, in fact, undermine the salutary goals of the statutory scheme." Id., 558. The court further noted that "[t]he conclusion that a particular injury to a particular plaintiff or class of plaintiffs possibly is foreseeable does not, in itself, create a duty of care. . . . Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is

allowed. . . . [W]e recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Internal quotation marks omitted.) Id., 557–58.

To prove negligence per se, a plaintiff must show that the defendant breached a duty owed to her and that the breach proximately caused the plaintiff's injury. *Shritah* v. *Stop & Shop Cos.*, 54 Conn. App. 273, 275, 734 A.2d 1035 (1999). "The doctrine of negligence per se serves to superimpose a legislatively prescribed standard of care on the general standard of care." *Staudinger* v. *Barrett*, 208 Conn. 94, 101, 544 A.2d 164 (1988).

Section 51-247a does not set any particular standard of care; rather, it simply prohibits certain conduct. In the present case, the plaintiff confuses the statutory prohibition against discharging employees for complying with an order compelling jury service with establishing a standard of care. Her premise being faulty, the plaintiff's negligence per se claim must fail.

For the foregoing reasons, we conclude that the court properly determined that the plaintiff failed to state a claim for which relief could be granted because a violation of § 51-247a is not a basis for asserting a claim of negligence per se and, alternatively, because § 51-247a was the plaintiff's exclusive remedy. We further conclude that the court properly granted the defendant's motion to strike the first count of the complaint.

The judgment is affirmed.

In this opinion the other judges concurred.